# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MARCELLENA BLUE SHAMLEY,<br><br>                  Plaintiff,<br><br>v.<br><br>JULIE AQUAVIA, JENNA MERTIN,<br>and MARY SCHULTZ,<br><br>                  Defendants. | Case No. 25-CV-1078-JPS<br><br><br>**ORDER** |

**1.    INTRODUCTION**

In July 2025, Plaintiff Marcellena Blue Shamley ("Plaintiff"), proceeding pro se, sued Julie Aquavia ("Aquavia"), Jenna Mertin ("Mertin"), and Mary Schultz ("Schultz") (together, "Defendants"), alleging, inter alia, discrimination, retaliation, and other violations of her constitutional rights. ECF No. 1. Plaintiff also moved for leave to proceed in forma pauperis. ECF No. 3. That motion, and the screening of Plaintiff's pro se complaint, are now before the Court. For the reasons discussed herein, the Court concludes that Plaintiff's complaint fails to state any federal claim upon which relief may be granted, and thus that her complaint cannot survive screening before this Court. The Court will grant Plaintiff leave to file an amended complaint and will defer resolving her motion for leave to proceed in forma pauperis.

**2.    MOTION TO PROCEED IN FORMA PAUPERIS**

A party proceeding pro se may submit a request to proceed without prepaying the filing fees, otherwise known as a motion to proceed in forma pauperis. "The federal in forma pauperis statute, 28 U.S.C. § 1915, is

designed to ensure [that] indigent litigants have meaningful access to the federal courts while at the same time prevent indigent litigants from filing frivolous, malicious, or repetitive lawsuits." *Rodriguez v. Crim. Just. Facility Safety Bldg.*, No. 23-CV-394, 2023 WL 3467565, at *1 (E.D. Wis. Apr. 7, 2023) (citing *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)), *report and recommendation adopted sub nom. Rodriguez v. Crim. Just. Facility*, No. 23-CV-394-PP, 2023 WL 3467507 (E.D. Wis. May 15, 2023).[1]

To determine whether it may authorize a litigant to proceed in forma pauperis, the Court engages in a two-part inquiry. It must examine whether the litigant is able to pay the costs of commencing the action. 28 U.S.C. § 1915(a). The Court must also examine whether the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief"; if any of these criteria applies, the Court "shall dismiss the case." 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). Likewise, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The Court engages in this part of the inquiry *infra* Section 3.

It follows that a litigant whose complaint does not clear the § 1915(e)(2) threshold or does not plead claims within the Court's subject matter jurisdiction, and whose case cannot proceed as a result, necessarily

---

[1] Although 28 U.S.C. § 1915(a) specifically references "prisoner" litigants, it has been interpreted as providing authority for such requests by both prisoner and non-prisoner pro se litigants alike. *Floyd v. U.S. Postal Serv.*, 105 F.3d 274, 275–76 (6th Cir. 1997), *superseded by rule on other grounds as recognized by Callihan v. Schneider*, 178 F.3d 800 (6th Cir. 1999); *see also Mitchell v. Farcass,* 112 F.3d 1483, 1491 n.1 (11th Cir. 1997) ("Section 1915(e) applies to all [in forma pauperis] litigants—prisoners who pay fees on an installment basis, prisoners who pay nothing, and nonprisoners in both categories.") (Lay, J., concurring)).

cannot reap the benefits of proceeding in forma pauperis. In other words, although in forma pauperis status ought to be granted to those impoverished litigants "who, within the District Court's sound discretion, would remain without legal remedy if such privilege were not afforded to them," *Brewster v. N. Am. Van Lines, Inc.*, 461 F.2d 649, 651 (7th Cir. 1972), a pro se litigant's financial status is only part of the picture in determining whether the litigant's case may proceed without payment of the filing fee.

The Court declines to analyze at this juncture whether Plaintiff is indigent because, as it discusses *infra* Section 3, there are barriers to Plaintiff proceeding with this lawsuit in this forum that must first be addressed. The Court will accordingly defer ruling on Plaintiff's motion for leave to proceed in forma pauperis.

3. **SCREENING THE COMPLAINT**

    3.1 **Legal Standard**

Notwithstanding the payment of any filing fee, the Court may screen a complaint and dismiss it or any portion thereof if it raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003) ("District judges have ample authority to dismiss frivolous or transparently defective suits spontaneously, and thus save everyone time and legal expense. This is so even when the plaintiff has paid all fees for filing and service . . . ."); *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999) ("[D]istrict courts have the power to screen complaints filed by all litigants . . . regardless of fee status."). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke*, 490 U.S. at 325); *Hutchinson ex rel.*

*Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997) (quoting *Neitzke*, 490 U.S. at 325). The Court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule "requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." *United States, ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003).

The complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). However, the Court "need not accept as true 'legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678) (internal bracketing omitted).

### 3.2 Plaintiff's Factual Allegations

The Court discerns the following from Shamley's complaint. On June 30, 2025, Schultz allegedly sent an email disclosing Plaintiff's conviction to Plaintiff's employer. ECF No. 1 at 2. This caused Plaintiff to experience emotional distress and "adverse action" of some kind. *Id*. That disclosure also allegedly factored into the wrongful denial of a provisional license of some kind. *Id*. at 2–3. On July 18, 2025, Plaintiff spoke to City Attorney Jenna Mertin[2] to discuss whether Plaintiff could apply for this provisional license. *Id*. at 2. That conversation turned into a heated exchange, where Mertin was "very argumentative and hostile." *Id.* The conversation culminated in Mertin hanging up the phone and blocking Plaintiff's calls. *Id*. Later that day, around noon, Plaintiff spoke with someone working for the City of Brookfield who informed Plaintiff that Mertin had advised the City of Brookfield to not issue the provisional license. *Id*. at 2–3. Five hours later, Plaintiff received an email from Aquavia, sending Plaintiff an application (it is unclear for what) that Plaintiff "never requested" and further "exposing [Plaintiff's] denial information" to another one of her employers. *Id*. at 3. Plaintiff then called Aquavia and asked her to stop harassing Plaintiff; in response Aquavia uttered "racial epithets towards 'Italian Names'" at Plaintiff. *Id*.

Plaintiff allegedly reported Aquavia's conduct to Mertin. *Id*. Plaintiff "made it clear that [she] was . . . a victim of discrimination in many ways[,] [her] rights were violated[,] [her] privacy was violated,[ she] was unlawfully slandered, . . . emotionally abused . . . on [sic.] all capacities,

---

[2]In the caption, Plaintiff refers to her as Jenna Mertin. In the statement of the claim section, Plaintiff refers to her as Jenna Merten. The Court notes they appear to be the same individual and will refer to her as "Mertin" herein.

[and] never offered … a provisional license at a Munic[i]pal Level. *Id.* Stemming from these facts Plaintiff alleges that her Fourth Amendment rights were violated, and that she was the victim of unlawful discrimination and retaliatory practices. *Id.*

### 3.3 Law and Analysis

#### 3.3.1 Title VII Discrimination and Retaliation

To state a Title VII discrimination claim, a plaintiff must allege "[1] [that] [s]he is a member of a class protected by the statute, [2] that [s]he has been the subject of some form of adverse employment action . . . , and [3] that the employer took this adverse action on account of the plaintiff's membership in the protected class." *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018) (quoting *Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013)). The screening standard in employment discrimination cases, and in civil cases generally, is lenient for pro se plaintiffs: "a plaintiff need only allege enough facts to allow for a *plausible* inference that the adverse action suffered was connected to her protected characteristics." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (citing *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021) and *Tamayo*, 526 F.3d at 1084).

The Court discerns a potential Title VII discrimination claim based on a hostile work environment or disparate treatment, and a retaliation claim based on the complaint. It will analyze each potential claim separately. *Gaines v. K-Five Constr. Corp.*, 742 F.3d 256, 261 (7th Cir. 2014) ("Normally, discrimination and retaliation claims are analyzed separately.").

Before analyzing the specific elements of each Title VII claim, however, the Court notes that all of Plaintiff's Title VII claims fail because

Page 6 of 18
Case 2:25-cv-01078-JPS    Filed 11/04/25    Page 6 of 18    Document 8

Plaintiff does not allege that she is a member of a protected class[3] and has further failed to allege that Defendants took any adverse action toward her based on her membership in a protected class.[4] Her Title VII claims, therefore, fail. *See Abrego*, 907 F.3d at 1012; *see, e.g.*, *Junco v. United Ground Express, Inc.*, No. 24-cv-452-pp, 2024 WL 4650902, at *3 (E.D. Wis. Nov. 1, 2024) (finding that the complaint failed to state a claim because it did "not allege[] sufficient facts demonstrating that [the plaintiff was] a member of a protected class"). The Court will further note that Plaintiff's Title VII claims fail because she has not identified her employer, and there is no indication that any of Defendants work for her employer, so any adverse action they may have taken against her cannot be attributed to her employer.

The Court will grant Plaintiff leave to amend her complaint to attempt to resolve these deficiencies. In any amended complaint, Plaintiff must allege any protected class(es) of which she is a member and must explain how Defendants are connected to her employer or otherwise name her employer in order to state a viable Title VII claim.

### 3.3.1.1 Hostile Work Environment

For a Title VII discrimination claim premised on a hostile work environment, Plaintiff must allege harassment of sufficient severity and pervasiveness. *See Eason v. Potter*, No. 03-CV-812, 2006 WL 2583430, at *5 (E.D. Wis. Sept. 5, 2006) ("Under Title VII, in order for a claimant to

---

[3]Plaintiff needs to specify the basis on which she alleges that she was discriminated against, be it her race, color, gender, religion, national origin, or age, or some combination thereof. *See Fassbender v. Carroll Univ.*, No. 23-CV-645-JPS, 2023 WL 3728090, at *1 (E.D. Wis. May 30, 2023).

[4]The Court uses she/her pronouns based solely on Plaintiff's first name, but Plaintiff does expressly state her gender.

establish a *prima facie* case alleging a hostile work environment, [s]he must demonstrate that [s]he was harassed because of [her] [membership in a protected class] by a co-worker or a supervisor. . . . Furthermore, the alleged harassment must be so severe and pervasive as to alter the conditions of employment and create an abusive working environment." (citing *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 462 (7th Cir. 2002) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998))).

Plaintiff fails to state a discrimination claim based on hostile work environment because the complaint does not contain any allegations about how her employer (or anyone who worked for her employer) harassed her based on her membership in a protected class. The only mention of hostility in the complaint surrounds a conversation with a City of Brookfield employee, *see* ECF No. 1 at 5, and there is no indication that Plaintiff ever worked for the City of Brookfield nor that this conversation was held as part of Plaintiff's employment.[5] The Court will grant Plaintiff leave to amend her complaint to attempt to resolve this deficiency. If she chooses to do so, Plaintiff should clarify which defendant is her employer or works for her employer or, alternatively, add her employer as a new defendant to the complaint, and state the specific events and actions that made her work environment at that defendant hostile, including specific circumstances and dates.

### 3.3.1.2 Disparate Treatment

A Title VII disparate treatment claim requires pleading "a materially adverse change in the terms and conditions of employment [that is] more

---

[5]The IFP form that Plaintiff filed suggests that Plaintiff has most recently been employed by Pick 'n Save and Exela Technologies. ECF No. 3 at 2.

Page 8 of 18
Case 2:25-cv-01078-JPS   Filed 11/04/25   Page 8 of 18   Document 8

disruptive than a mere inconvenience or an alteration of job responsibilities," which "was motivated by intentional discrimination." *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017) (first quoting *Stockett v. Muncie Ind. Transit Sys.*, 221 F.3d 997, 1001 (7th Cir. 2000) then citing *Ernst v. City of Chicago*, 837 F.3d 788, 794 (7th Cir. 2016)). A materially adverse change for purposes of such a claim may include "termination of employment . . . ." *De la Rama v. Ill. Dep't of Hum. Servs.*, 541 F.3d 681, 685 (7th Cir. 2008) (quoting *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 612–13 (7th Cir. 2001)); *see also Freeman v. Metro. Water Reclamation Dist. of Greater Chi.*, 927 F.3d 961, 965 (7th Cir. 2019) ("[T]o proceed . . . under . . . Title VII, [the plaintiff] needed only to allege . . . that [her employer] fired h[er] because of h[er] [membership in a protected class]." (citing *Tamayo*, 526 F.3d at 1084 and *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998))).

Here, Plaintiff alleges she was not issued some sort of provisional license by the City of Brookfield. However, such an allegation does not amount to material change in the terms of employment given that Plaintiff does not allege she was employed by the City of Brookfield. While Plaintiff alleges that her employer took "adverse action" following receipt of information about her prior conviction, Plaintiff does not allege that she was terminated, demoted, or otherwise sanctioned by her employer in response, let alone that any such decision was "motivated by intentional discrimination." *Freeman*, 927 F.3d at 965 (citing *Tamayo*, 526 F.3d at 1084 and *Bennett*, 153 F.3d at 518). The Court will grant Plaintiff leave to amend her complaint to attempt to resolve this deficiency. If she chooses to do so, Plaintiff should clarify which defendant is her employer or works for her employer, or add her employer as a new defendant to the complaint, and state why that defendant took adverse action against here, what the adverse

Page 9 of 18
Case 2:25-cv-01078-JPS    Filed 11/04/25    Page 9 of 18    Document 8

action was, and what interactions or communications led her to believe that the adverse action was based on her membership in a protected class.

### 3.3.1.3 Retaliation

With respect to retaliation, a Title VII plaintiff "must plead that she engaged in a statutorily protected activity and was subjected to materially adverse actions as a result of that activity." *Hatcher v. Bd. of Trs. of S. Ill. Univ.*, 829 F.3d 531, 536 (7th Cir. 2016) (citing *Burlington N. and Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006)). Opposing or complaining about perceived discrimination believed to be in violation of Title VII is a statutorily protected activity. *Miller v. Am. Fam. Mut. Ins. Co.*, 203 F.3d 997, 1007 (7th Cir. 2000) ("Title VII protects persons . . . from retaliation for complaining about the types of discrimination it prohibits." (citing *Dey v. Colt Constr. Dev. Co.*, 28 F.3d 1446, 1457 (7th Cir. 1994))). That is so even if the underlying perceived discrimination is ultimately not actionable as a matter of law. *Rinella v. City of Chicago*, No. 16-CV-04088, 2016 WL 7241185, at *6 (N.D. Ill. Dec. 14, 2016) ("[A] complainant c[an] proceed on a Title VII retaliation claim, even if her Title VII claim based on the discrimination about which she complained fail[s] as a matter of law." (citing *Berg v. LaCrosse Cooler Co.*, 612 F.2d 1041, 1043 (7th Cir. 1980))).

Plaintiff's retaliation claim fails because she does not allege that she reported discrimination in violation of Title VII, but merely that she was "a victim of . . . retalitory practices [sic]." ECF No. 1 at 3. Even if this were sufficient to serve as the basis for a Title VII retaliation claim, nothing in the complaint suggests that Plaintiff reported it to her employer, but rather to a Mertin, who is a "City Attorney." Plaintiff does not allege that she experienced discrimination from her employer, nor that she reported her employer's discrimination and her employer had knowledge of that

reporting. Her retaliation claim thus fails as pled. Accordingly, the Court will grant Plaintiff leave to amend to correct these deficiencies. If she chooses to do so, Plaintiff should take care to clarify which defendant is her employer or works for her employer, or add her employer as a new defendant to the complaint, and describe what she reported to her employer or elsewhere that her employer later learned of and what specific actions her employer took against her as a result of her report(s) that she considers to be retaliatory.

### 3.3.2 Fourth Amendment Claim

"The Fourth Amendment guarantees the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,' and subject to 'few exceptions,' it requires officers to obtain a warrant before searching a home." *United States v. Gutierrez*, 760 F.3d 750, 753 (7th Cir. 2014) (quoting *Kyllo v. United States*, 533 U.S. 27, 31 (2001)). Fourth Amendment violations can vary in nature. *See, e.g., Martin v. Xiong*, No. 24-CV-1664-JPS, 2025 WL 2429944, at *3–6 (discussing a Fourth Amendment unlawful arrest claim, a Fourth Amendment excessive force claim, and a Fourth Amendment claim for wrongful detention based on fabricated evidence).

The Court has no direction to point Plaintiff based on her complaint because it fails to plead any allegations that remotely parallel a Fourth Amendment claim. The Court will permit Plaintiff to amend her complaint to the extent she can state a legitimate constitutional claim, but it lacks information to guide her as to what potential claims she may have at this juncture.

### 3.3.3 State Law Claims

The Court discerns several potential state law claims in addition to the federal claims discussed *supra* Sections 3.3.1 and 3.3.2. While the Court provides pleading standards and analysis to guide Plaintiff if she chooses to amend her complaint, it notes that the Court's supplemental jurisdiction over any state law claim depends on its original jurisdiction over Plaintiff's federal claims. *See* 28 U.S.C. § 1367(a) and (c). Indeed, though the Court holds that Plaintiff's complaint does state a viable state law claim for intentional infliction of emotional distress, *see infra* Section 3.3.3.4, the Court will nonetheless dismiss Plaintiff's case if she does not timely amend her complaint to state a valid federal claim as well, *see infra* Section 4.

#### 3.3.3.1 Defamation

Plaintiff has also alleged that she was "unlawfully slandered" by Aquavia. A defamation claim under Wisconsin law requires a showing that "the defendant (1) published (2) a false, (3) defamatory, and (4) unprivileged statement." *Colborn v. Netflix, Inc.*, 661 F.Supp.3d 838, 847 (E.D. Wis. 2023) (quoting *Fin. Fiduciaries, LLC v. Gannet Co., Inc.*, 46 F.4th 654, 665 (7th Cir. 2022)). Here, Defendant alleges that her "denial information" was "expose[d]" to her "other [e]mployer" but does not provide any detail about what that information was and whether it was false or privileged. ECF No. 1 at 3. In fact, the allegations seem to indicate that the provisional license was indeed denied (suggesting that the "denial information" might have been true), and that Plaintiff seeks to challenge the merits of that denial. *Id.* at 5 ("[Plaintiff] was never given a fair chance to resolve [her denial].").

This claim cannot survive screening as pled. The Court will grant Plaintiff leave to amend to correct these deficiencies. If she chooses to do so,

Plaintiff should take care to describe who shared what false, nonprivileged, defamatory statement and with whom.

#### 3.3.3.2 Intrusion upon Seclusion

The Court broadly construes Plaintiff's reference to "invasion of privacy" and analyzes several potential claims stemming from this allegation separately. First, the Court interprets this as a possible violation of subsection of Wis. Stat. § 995.50(2)(am)(1). That subsection provides that "invasion of privacy" means "[i]ntrusion upon the privacy of another of a nature highly offensive to a reasonable person . . . in a place that a reasonable person would consider private, or in a manner that is actionable for trespass." *Id*. Wisconsin case law indicates that privacy intrusions require physical spaces. *Hillman v. Columbia County*, 474 N.W. 2d 913, 919 (Wis. Ct. App. 1991) ("We believe the plain meaning of 'a place' is geographical. It does not include a file of medical records."). The complaint does not contain any allegations that a defendant intruded upon a physical space. Accordingly, this claim cannot survive as pled. The Court will grant Plaintiff leave to amend to correct this deficiency. If she chooses to do so, Plaintiff should take care to describe what geographical space was intruded upon, when, by whom, and what made such an intrusion "highly offensive." WIS. STAT. § 990.50(2)(am)(1).

#### 3.3.3.3 Public Disclosure of Private Facts

The Court next interprets Plaintiff's reference to "invasion of privacy" as a potential violation of Wis. Stat. § 995.50(2)(am)(3), which provides that "invasion of privacy" means "[p]ublicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or

recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed. It is not an invasion of privacy to communicate any information available to the public as a matter of public record." A claim under this subsection requires Plaintiff to establish four elements:

> (1) there has been a 'public disclosure' of facts regarding [Plaintiff], (2) the facts disclosed were private, (3) the private matter is one that would be highly offensive to a reasonable person of ordinary sensibilities, and (4) [Defendants] acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter or with actual knowledge that none existed.

*Olson v. Red Cedar Clinic*, 681 N.W.2d 306, ¶ 8 (Wis. Ct. App. 2004) (citing *Zinda v. La. Pac. Corp.*, 440 N.W.2d 548, 555 (1989)). Both state and federal convictions are public record, thus the mere fact that Schultz shared "details of [Plaintiff's] [c]onviction" with Plaintiff's employer does not give rise to a Constitutional claim. *Willan v. Columbia County*, 280 F.3d 1160, 1162–64 (7th Cir. 2002) ("Records of conviction are public rather than private documents . . . ; the information in them is not the property of the convicted persons, and therefore the National Crime Information Center had every right, at least so far as the Constitution is concerned, to record and disseminate [the plaintiff]'s conviction."). Plaintiff does not allege that her conviction, whether state or federal, was sealed, so the Court will presume it was public information. Plaintiff, therefore, fails to state a claim. The Court will grant Plaintiff leave to amend to correct this deficiency. If she chooses to do so, Plaintiff should take care to explain what private information was disclosed and why it was a matter that would be "highly offensive to a reasonable person. *Olson*, 681 N.W.2d at ¶ 8.

### 3.3.3.4  Infliction of Emotional Distress

Finally, Plaintiff makes a claim for emotional distress—this claim could either fall within Wisconsin's provisions for negligent or intentional infliction of emotional distress, so the Court will address both in turn. "The general rule in Wisconsin is that, to recover for the negligent infliction of emotional distress, the plaintiff's emotional distress must be manifested by physical injury." *Nelson v. Monroe Reg'l Med. Ctr.*, 925 F.2d 1555, 1561 (7th Cir. 1991) (quoting *Meracle v. Children's Serv. Soc'y*, 437 N.W.2d 532, 535 (Wis. 1989) (internal quotation marks omitted). Because Plaintiff does not allege that she was physically injured, this claim is not adequately pled in her complaint.

For intentional infliction of emotional distress, a plaintiff must plead that the "defendant's conduct was so egregious that 'the average member of the community' would regard the acts forming the basis for the claim 'as being a complete denial of the plaintiff's dignity as a person.'" *Nelson*, 925 F.2d at 1559 (quoting *Alsteen v. Gehl*, 124 N.W.2d 312, 318 (Wis. 1963)). Under Wisconsin law, this claim requires Plaintiff to show: (1) that the defendant behaved in the manner alleged for the purpose of causing emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused Plaintiff's injury; and (4) that Plaintiff suffered an extreme disabling emotional response to that conduct. *Alsteen*, 124 N.W.2d at 318.

Plaintiff alleges that Defendants "emotionally abused [her] in all capacities." ECF No. 1 at 3. Specifically, Plaintiff alleges that Aquavia harassed her, despite knowing Plaintiff had PTSD, and called her racial epithets. Drawing all reasonable inferences in Plaintiff's favor, *Kubiak*, 810 F.3d at 480–81 (internal citation omitted), the Court finds that these

allegations give rise to a claim of intentional infliction of emotional distress. As such, the Court will allow Plaintiff to proceed on a state law claim for intentional infliction of emotional distress against Aquavia.

## 4. CONCLUSION

For the reasons stated above, only Plaintiff's state law claim for intentional infliction of emotional distress can survive screening, and this claim does not belong in federal court without a corresponding federal claim. *See* 28 U.S.C. § 1367(a) and (c). Accordingly, Plaintiff's complaint must be dismissed in its current version, but the Court will grant Plaintiff an opportunity to try again by filing an amended complaint. The Court is enclosing a copy of its amended complaint form and instructions. If Plaintiff chooses to take advantage of this opportunity, she must file a legible complaint on or before **December 2, 2025**. Her amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint." Plaintiff's amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it should accurately state what occurred and when, and it must provide the Court and Defendants with notice of what any defendants allegedly did or did not do to violate Plaintiff's rights. Any such amended complaint must be complete in and of itself without reference to the original complaint. *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1057 (7th Cir. 1998) (citing *Wellness Cmty.-Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995)). In the case of amendment, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading." *Id.* (quoting *Fuhrer v. Fuhrer*, 292 F.2d 140, 144 (7th Cir. 1961)).

If Plaintiff files an amended complaint, it will become the operative complaint in this matter, and the Court will screen it in accordance with 28

Page 16 of 18
Case 2:25-cv-01078-JPS   Filed 11/04/25   Page 16 of 18   Document 8

U.S.C. § 1915. If Plaintiff fails to timely file an amended complaint as instructed herein, or if she files a complaint that fails to comply with Rule 8 or fails to remedy the deficiencies discussed herein, the Court will dismiss her case without further notice.

Accordingly,

**IT IS ORDERED** that the Clerk's Office mail Plaintiff a blank non-prisoner amended complaint form and a copy of the guide entitled "Answers to Pro Se Litigants' Common Questions," along with this Order; and

**IT IS FURTHER ORDERED** that Plaintiff shall, on or before **December 2, 2025**, **FILE** an amended complaint in accordance with the instructions provided herein. Failure to timely do so will result in dismissal of this action without prejudice and without further notice.

Dated at Milwaukee, Wisconsin, this 4th day of November, 2025.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

> Plaintiff will be required to submit all correspondence and legal material to:
>
> > Office of the Clerk
> > United States District Court
> > Eastern District of Wisconsin
> > 362 United States Courthouse
> > 517 E. Wisconsin Avenue
> > Milwaukee, Wisconsin 53202
>
> **DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.
>
> Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.